640 So.2d 335 (1994)
Rachel JONES, Plaintiff-Appellant,
v.
MURPHCO OF FLORIDA d/b/a Holiday Inn of Jennings and Travelers Insurance, Defendants-Appellees.
No. 93-540.
Court of Appeal of Louisiana, Third Circuit.
February 16, 1994.
*336 Michael Benny Miller, Crowley, for Rachel Jones.
Michael Glenn Hodgkins, Lake Charles, for Murphco of Fla., dba Holiday Inn of Jennings, et al.
Before COOKS, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
This is a worker's compensation claim. On March 27, 1991, plaintiff, Rachel Jones, was employed by Murphco of Florida, d/b/a Holiday Inn of Jennings (Holiday Inn), as a lobby maid when she sustained a lumbar strain while in the course and scope of her employment. *337 At the time of her injury, Holiday Inn was insured by defendant-appellee, Travelers Insurance Company (Travelers), for workers' compensation benefits. Jones' workers' compensation benefits were terminated in April of 1992.
Jones filed a claim against Holiday Inn and Travelers alleging that she was entitled to weekly compensation benefits. Additionally, Jones alleged that defendants failed to pay weekly compensation benefits timely and in the correct amount and that Travelers failed to provide medical treatment to Ms. Jones. Ms. Jones also alleged that Travelers had been arbitrary and capricious in its handling of her claim.
This matter was tried on December 8, 1992. The hearing officer made the following findings of fact in his January 11, 1993, judgment:
"1) Claimant RACHEL A. JONES suffered a compensable work related injury on March 27, 1991, while working as a lobby maid when she allegedly sustained a lumbar strain.
2) Claimant was examined by her physician of choice on March 27, 1991, namely Dr. T.C. Phlastre. Dr. Phlastre diagnosed the claimant's condition as stated above. She was taken off from work following the examination for a period of three (3) days and, thereafter, given a release to return to work on March 31, 1991.
3) On April 3, 1991, claimant returned to see Dr. Phlastre who noted at this time of examination that claimant complained of back pain and numbness of her leg. Dr. Phlastre took the claimant off of work until further notice and referred her to Dr. Dale Bernauer.
Dr. Phlastre's written report of claimant's condition and the medical recommendation was received by the insurer on May 16, 1991. The insurer spoke with the claimant concerning the report and arranged for her to see Dr. Gregory Gidman on May 24, 1991. The insurer received a medical report of the claimant's condition via telephone from Dr. Gidman's office on May 25, 1991. Dr. Gidman released the claimant to return to work.
The factual evidence introduced at trial indicate that the insurer issued temporary total disability benefits from the date of the accident through May 25, 1991."
Jones' first compensation check paid her from the date of the accident through May 25, 1991. We note that it was stipulated at trial that the last compensation check paid Jones covered the period from April 21, 1992, through April 28, 1992.
The hearing officer made the following conclusions of law in his January 11, 1993, judgment:
"This Court rules that benefits herein were paid by the insurer in a timely manner as well as in full. The insurer was entitled to cease payment of benefits when the claimant was released to return to work on May 4, 1992 based upon the results of the physician's recommendation. The Court finds based upon testimony and facts that each time the claimant's benefits were terminated or reinstated was based on competent medical advice. The Court finds further, that the insurer was neither arbitrary or capricious in providing for the claimant's medical needs up to final release by Dr. Bernauer.
Based upon the law and the evidence the Court finds in favor of the defendant and against the claimant, dismissing her claim with prejudice at her cost."
Plaintiff appeals the findings of the hearing officer and assigns the following as error:
(1) The hearing officer erred in failing to find that the weekly compensation rate of Rachel A. Jones was $101.83 per week.
(2) The hearing officer erred in failing to find that Jones was entitled to weekly compensation benefits and medical treatment after her third and final release by Dr. Bernauer on April 27, 1992, which released her to return to work on May 4, 1992.
(3) The hearing officer erred in failing to compel Travelers to pay weekly compensation benefits for the periods of August 29, 1991, through September 11, 1991, and from March 12, 1992, through March 23, 1992.

*338 (4) The hearing officer failed to find that Jones was entitled to penalties and attorney's fees due to the late payment and arbitrary and capricious handling of her claim.
(5) It was error to dismiss Rachel A. Jones' claim with prejudice.

COMPENSATION RATE
By her first assignment of error, the plaintiff contends that the defendant failed to pay her compensation at the rate set forth for a full-time worker in LSA-R.S. 23:1021(10)(a)(i), which states as follows:
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater;
Instead, Jones' compensation rate was calculated using LSA-R.S. 23:1021(10)(a)(ii), which states as follows:
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident;
During the time that Jones was disabled, she was paid $75.00 per week in workers' compensation benefits based upon an average weekly wage of $92.63 prior to the injury.
Jones contends that her weekly compensation rate should be $101.83 per week based upon an average weekly wage of $150.00 per week or $3.80 per hour at 40 hours per week.
Plaintiff testified that she was hired as a full-time employee and normally scheduled to work 40 hours per week. She testified that during some weeks, she worked overtime while in other weeks, she worked less than 40 hours per week.
Donna Boudoin, the general manager at the Holiday Inn, testified that she defined a full-time employee as an employee who worked five (5) days a week and a part-time employee as an employee who worked up to five (5) days a week. She testified that Jones worked a consistent schedule and was considered a full-time employee. Jones was hired to work as many hours as needed as long as it did not total more than 40 hours per week. Occasionally, there were times when overtime was paid.
Finally, we note that in the counseling session of March 12, 1992, when Jones returned to her job nearly one year after her injury, Wilma Doucet signed a written report confirming the discussion with Jones, which report states in part:
"The position she held Mona lobby maid that is now a part-time job. She will work Saturday, Sun. & Monday."
This statement of March 12, 1992, would imply that prior to this date, Jones' job was a full-time position. Finally, we note from plaintiff's time sheets, entered into evidence by defendants, that prior to her injury, Jones often worked five (5) days per week or ten (10) days in a two week pay period.
Jones' employment clearly does not fit under LSA-R.S. 23:1021(10)(a)(ii) as her work hours were in no way at her "own discretion." She worked more or less than forty (40) hours per week based upon instructions given to her by her employer and never at her "own discretion." Her employment regime is more accurately described by LSA-R.S. 23:1021(10)(a)(i) as her employment was for up to forty (40) hours per week and, on rare occasions, for more than forty (40) hours. Accordingly, we find that plaintiff is correct in her assertion that her rate of pay should have been governed by LSA-R.S. 23:1021(10)(a)(i) rather than LSA-R.S. 23:1021(10)(a)(ii) and that her weekly compensation rate should have been $101.83 instead of the $75.00 per week paid by defendants.
Accordingly, we find that Jones is entitled to the difference between the two amounts or $26.83 on all payments made by Travelers.

TERMINATION OF BENEFITS
The hearing officer found that Jones' benefits were paid timely and that the insurer *339 was neither arbitrary nor capricious in providing for the claimant's medical needs prior to the final release by Dr. Bernauer in late April of 1992.
Plaintiff was seen by Dr. Dale Bernauer, an orthopedic surgeon, initially on July 29, 1991, pursuant to a referral by Dr. Philastre, Jones' original treating physician. Dr. Bernauer treated plaintiff through September 8, 1992. During this period of treatment, Dr. Bernauer released Jones to full duty three (3) times, first on August 19, 1991, second on March 9, 1992, and finally on April 27, 1992. Dr. Bernauer consistently diagnosed Jones' back problem as a lumbar strain. He treated her with physical therapy in addition to scheduling normal X-rays, a CAT Scan, a MRI and a bone scan, all of which were normal. Each time Dr. Bernauer released Jones to return to work, she returned complaining of increased back pain and right leg pain.
In November of 1991, Dr. Bernauer started Jones on an exercise program with therapy which he continued until February of 1992. In February of 1992, Dr. Bernauer took Jones off physical therapy and put her on a home exercise program until the time of his second release in March of 1992. After the second release on March 9, 1992, Jones returned to Dr. Bernauer on March 23, 1992, complaining of back pain with bilateral leg pain while working. Dr. Bernauer took Jones off work for one week.
Plaintiff returned to Dr. Bernauer on March 30, 1992, at which time Dr. Bernauer made an appointment with Dr. Ford to try to determine why Jones was not able to get well. Plaintiff saw Dr. Ford on April 7, 1992, at which time he diagnosed mild lumbar strain and concurred with Dr. Bernauer that Jones could return to work. Dr. Bernauer released plaintiff for the third and final time after Jones' April 27, 1992, visit, releasing her to return to work on May 4, 1992.
Plaintiff returned to Dr. Bernauer May 18, 1992, complaining of continued back pain and right leg pain while working. Dr. Bernauer told her to work through the pain and come and see him in one (1) month. Plaintiff returned June 29, 1992, and reported that she had been fired. Dr. Bernauer testified that she could have probably worked if she had not lost her job. Dr. Bernauer last saw plaintiff on September 8, 1992, at which time she was still complaining of back pain and right leg pain. He found that she was capable of work at this time.
Jones next saw Dr. Shirley, her family physician, regarding her back on October 19, 1992. During this visit, he noted severe spasm of the left lumbar muscles.[1] Jones did not give Dr. Shirley any history of back pain, although Dr. Shirley testified that he had seen her in both 1981 and 1985 for prior back problems. He treated her conservatively and she did not return.
Based upon the medical evidence presented to the hearing officer, we find no manifest error in his ruling. The hearing officer was not clearly wrong in finding that Jones had recovered when she was released to return to work by Dr. Bernauer in May of 1992. The hearing officer was also not manifestly in error in finding that the injury which took plaintiff to Dr. Shirley with severe lumbar spasm on October 19, 1992, was unrelated to her March 1991 back strain.
It was stipulated at trial that the last compensation check was paid to Jones for the period from April 21, 1992, through April 28, 1992. Additionally, plaintiff's attorney stipulated at trial that the defendants had paid the medical bills and that the payment of medicals was not at issue in the trial.[2] In spite of the stipulation, plaintiff asserts that the hearing officer's failure to find that Travelers was required to pay Dr. Shirley's bill incurred in October of 1992 in the amount of either $18.00 or $25.00 was clear error. Plaintiff alleges that the visit to Dr. Shirley on October 19, 1992, was necessitated by home exercises first prescribed by Dr. Bernauer on February 3, 1992. Due to the binding nature of the stipulation which plaintiff's counsel made at trial, this issue is not properly before the court. Even if this unpaid medical bill was properly before us, we *340 find that Jones failed to prove that her October 1992 injury was caused by exercises which she had been doing for the prior eight (8) months. Based on the foregoing, we find no clear error in the rulings of the hearing officer.

NON-PAYMENT OF COMPENSATION BENEFITS
Jones alleges that the defendants failed to pay her compensation benefits for the period of August 29 through September 11, 1991, and for March 12 through March 23, 1992. The hearing officer found that Jones' benefits were paid in full. We agree.
Jean Drufner, Travelers' adjuster, testified as to the compensation payments made to Jones. Additionally, defendants' computerized payment summary, entered into evidence at the hearing, corroborated Drufner's testimony.
August 29, 1991, through September 11, 1991:
On August 19, 1991, Dr. Bernauer released Jones to return to work without restriction. By the time Jones reported her August 19, 1991, release on August 26, 1991, she had already been paid compensation benefits for the period from August 21, 1991, through August 28, 1991.
On September 10, 1991, the defendant was notified that Jones had been re-disabled as of September 3, 1991. The overpayment of August 21 through August 28, 1991, was then applied as a credit for the compensation owed for the period from September 4 through September 11, 1991. No benefits were owed between the dates of August 29, 1991, and September 3, 1991, as Jones was released to work during this time.
March 12, 1992, through March 23, 1992:
Dr. Bernauer again released plaintiff to work on March 3, 1992. She returned to Dr. Bernauer on March 23, 1992, complaining of back pain and bilateral leg pain, at which time Dr. Bernauer took her off work for one (1) week. Jones was then issued compensation benefits for the following week of March 24 through March 31, 1992.
Insofar as Jones was released to work between March 12 and March 23, 1992, in addition to the fact that Dr. Bernauer's deposition reflects that she told him she was working during this period, we find no error in the findings of the hearing officer.

PENALTIES AND ATTORNEY'S FEES
By her next assignment of error, Jones contends that Holiday Inn was arbitrary and capricious in the handling of her claim. In addition to the actions of Holiday Inn discussed in the previous assignments of error, Jones contends that the defendants failed to timely begin payment of compensation benefits and failed to provide timely treatment by Dr. Bernauer.
Under LSA-R.S. 23:1201.2, the assessment of attorney's fees is proper when an insurer fails to pay benefits within sixty (60) days of written notice and the failure to pay is found to be arbitrary, capricious or without probable cause.
Additionally, under LSA-R.S. 23:1201, the injured worker is entitled to a 12% penalty on all amounts due which are not paid within fourteen (14) days after notice of injury. Jones was not paid any weekly compensation benefits until May 28, 1991, at which time she was paid all compensation owing since March 27, 1991, the date of the accident.
LSA-R.S. 23:1201 regarding penalties also provides that:
Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer the penalties set forth in this Subsection shall not apply.
The evidence reveals that the hearing officer could have found that Travelers had reason to question whether plaintiff's back injury resulted from a lumbar strain or from a kidney infection. On the day after the injury, March 28, 1991, Jones was examined by a physician of her own choosing, Dr. T.C. Philastre. Dr. Philastre diagnosed a lumbar strain, took Jones off work for three (3) days and gave her a release to return to work on March 31, 1991.
Meanwhile, Jones reported her injury to her employer on March 28, 1991, and did not return to work on March 31, 1991. Instead, *341 Jones returned to Dr. Philastre on April 3, 1991, at which time he took her off work until she was cleared by an orthopedic surgeon and recommended Dr. Dale Bernauer. Dr. Philastre gave Jones a written excuse which she gave to her employer. This written slip did not make any mention of an on-the-job accident.
The defendants told Jones that they would not clear Jones' appointment with Dr. Bernauer until after they received a written report from Dr. Philastre. Due to a series of factors, including the fact that Jones did not have a phone and was difficult to contact, Jones did not sign a medical authorization slip until April 14, 1991. This authorization was mailed to Dr. Philastre on April 18, 1991. Meanwhile, Travelers telephoned Dr. Philastre's office on April 12, 15, 17, May 8 and May 15, 1991, asking them to send a medical report regarding Jones. Dr. Philastre's office refused to send any information to Travelers without a medical authorization and also refused to give any medical information over the telephone.
Meanwhile, on April 18, 1991, Travelers received written statements from several of Jones' co-workers, which were entered into evidence, which stated that Jones felt her back troubles were caused by a kidney infection.
Jones testified that Dr. Philastre's office actually sent the medical records three times, but Ms. Drufner of Travelers testified that they were not received by Travelers until May 16, 1991. This report, dated March 27, 1991, diagnosed an acute right lumbar strain and noted that Jones was concerned regarding a possible kidney infection. After receipt of Jones' medical records from Dr. Philastre, Travelers immediately verified approval of treatment by Dr. Bernauer. An appointment was not available with Dr. Bernauer until June 16, 1991. Instead of waiting, Jones then made an appointment with Dr. Gregory Gidman, an orthopedic surgeon, for May 24, 1991. After Jones' appointment, defendant contacted Dr. Gidman by phone without waiting for a written report. Dr. Gidman diagnosed chronic lower back strain and released Jones to work with a follow-up appointment in three weeks." A check for compensation benefits covering the period from March 28 to May 25, 1991, was issued to Jones by Travelers on May 28, 1991.
We hold that no penalties are due Jones insofar as we find that Jones' claim was reasonably controverted by the employer in light of the evidence tendered in Jones' coworkers' statements that Jones thought she had a kidney infection. Therefore, we find that Jones' claim for penalties for the delay between her injury and her first compensation check is without merit.
With reference to the claim for attorney's fees, even if we were to determine that the first note from Dr. Philastre on April 3, 1991, given to plaintiff was sufficient notice to the employer of Jones' injury, notwithstanding that it did not give any indication that plaintiff was injured in an on-the-job accident, we note that sixty (60) days did not elapse between April 3, 1991, and May 28, 1991, the date of plaintiff's initial compensation payment. Furthermore, since there was a reasonable dispute over plaintiff's entitlement, attorney's fees are clearly not warranted.

DISMISSAL WITH PREJUDICE
By her final assignment of error, Jones contends that the hearing officer erred in dismissing her claim with prejudice. We agree and reverse that portion of the judgment of the hearing officer.
LSA-R.S. 23:1310.8 states the law regarding a hearing officer's continuing jurisdiction to modify a prior ruling, in pertinent part, as follows:
A. (1) The power and jurisdiction of the hearing officer over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified....
(2) The hearing officer may have a full hearing on the petition ... and take such other testimony relevant to the subject matter of such petition as the hearing officer may require. The hearing officer may consider such petition and dismiss the *342 same without a hearing if in his judgment the same shall not be set for a hearing.
(3) The expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the hearing officer decides it is in the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly and the hearing officer may make an award that shall be final as to the rights of all parties to said petition and thereafter the hearing officer shall have no jurisdiction over any claim for the injury or any results arising from same. If the hearing officer should decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the hearing officer shall have the same jurisdiction over the matter as if said petition had not been filed.
B. Upon the application of any party in interest, on the ground of a change in conditions, the hearing officer may, after a contradictory hearing, review any award....
C. This Section shall not apply to the calculation of the monthly benefit amount pursuant to R.S. 23:1221(3).
Under the above statutory authority, the Office of Workers' Compensation retains jurisdiction on any future petition for modification filed by a party in interest. See also, Bright v. Claims Center, 609 So.2d 832 (La. App. 4th Cir.1992), writ denied, 615 So.2d 338 (La.1993) (wherein the Fourth Circuit held that the hearing officer has only those powers granted by the Legislature and unless the authority to dismiss a plaintiff's claim was specifically conferred by the Legislature, the hearing officer exceeded his authority). As such, we find that the hearing officer erred in dismissing Jones' petition with prejudice.

DECREE
We reverse that portion of the hearing officer's judgment which dismisses Jones' claim with prejudice. We amend the judgment of the hearing officer to award Jones an additional $26.83 per week for the underpayment of compensation benefits. In all other respects, the judgment of the hearing officer is affirmed.
Costs at trial and on appeal to be paid by defendant, Murphco of Florida, d/b/a Holiday Inn of Jennings and Travelers Insurance.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED.
NOTES
[1] We note that Dr. Philastre's original diagnosis was right lumbar strain.
[2] Dr. Bernauer's bills were paid through September of 1992.